UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION



| | |
|---|---|
| MARY DEVILLEZ ) | |
| (Social Security No. XXX-XX-5009), ) | |
| ) | |
| Plaintiff, ) | |
| ) | 3:12-cv-86-WGH-RLY |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security,[1] ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON JUDICIAL REVIEW**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, pursuant to the parties' consents and an Order of Reference entered April 23, 2013. (Docket No. 19). Mary Devillez seeks judicial review of the final decision of the Commissioner of Social Security, which found her not disabled and therefore not entitled to benefits under the Social Security Act. 42 U.S.C. § 301 *et seq.* For the reasons stated below, the Commissioner's decision must be **REMANDED**.

**I.     Background**

  **A.     Procedural History**

Devillez applied for Disability Insurance Benefits on October 2, 2010, and Supplemental Security Income on October 22, 2010, alleging a disability onset

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure Rule 25(d), Colvin is automatically substituted as the Defendant in this suit.

date of September 21, 2010. Her applications were denied initially and upon reconsideration. (R. at 12, 89-106, 109-122). On March 6, 2012, an Administrative Law Judge held a hearing, during which Devillez and a vocational expert testified. On March 21, 2012, the ALJ issued her opinion finding that Devillez was not disabled. (R. at 27-28). The Appeals Council denied Devillez's request for review on May 3, 2012, leaving the ALJ's decision as the final decision of the Commissioner. 20 C.F.R. §§ 404.955(a), 404.981. As a final decision, the court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

    **B.    ALJ Findings**

The ALJ's decision included the following relevant findings: (1) Devillez had not engaged in substantial gainful activity since the alleged disability onset date; (2) Devillez had the following severe impairments: post-laminectomy syndrome of lumbar spine, obesity, and major depressive disorder (R. at 14-15); (3) none of these impairments met or equaled the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1 Listings" or "Listings") (R. at 15-17); (4) Devillez had a residual functional capacity ("RFC") to perform sedentary work with the following limitations: she can never kneel, crawl, or climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs, balance, stoop, and crouch; she must avoid concentrated exposure to hazards such as unprotected heights and exposed moving machinery; she can perform simple, repetitive, and routine instructions; and she can have occasional and superficial contact with coworkers, supervisors, and the general public (R. at

17-26); (5) Devillez was unable to perform any past relevant work as defined by 20 C.F.R. §§ 404.1565, 416.965; (6) Devillez was 39 years old on the alleged disability onset date, has at least a high school education, and can communicate in English; and (7) considering Devillez's age, education, work experience, and RFC, there existed significant jobs in the national economy she could perform. (R. at 26-27). Based on these factual findings, the ALJ concluded Devillez was not disabled.

## II.     Legal Standards

In order to qualify for disability benefits, Wilson must establish that he suffered from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To establish disability, the claimant must present medical evidence of an impairment resulting "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

The Social Security regulations outline a five-step inquiry the ALJ is to perform in order to determine whether a claimant is disabled. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe

impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform her past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4).  The burden of proof is on Devillez for steps one through four; only after Devillez has met her evidentiary burden does the burden shift to the Commissioner at step five.  *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

An ALJ's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (internal quotation omitted); *see also Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997).

### III.  Discussion

On appeal, Devillez argues that the ALJ's decision is not supported by substantial evidence.  Specifically, she claims that the ALJ:  (A) erred by failing to discuss whether she met Appendix 1 Listing 12.07; (B) failed to mention and appropriately weigh the opinion of Dr. John Wuertz; (C) failed to articulate substantial evidence to support her RFC determination or properly discuss the findings of Drs. David Cerling and Bryant Bloss; and (D) failed to fully discuss the opinion of Dr. Vaibhave Parikh.

### A. Failure to discuss Appendix 1 Listing 12.07: Somatoform Disorders

Devillez had been diagnosed with somatoform disorder by Dr. Ryan Flamion (R. at 284), a diagnosis previously implied by Dr. Parikh (R. at 394). Moreover, Devillez's attorney argued for such a diagnosis at her hearing. (R. at 58). However, while the ALJ discussed medical evidence in finding her symptoms did not meet or equal Appendix 1 Listings 1.04, Disorders of the Spine, and 12.04, Affective Disorders (R. at 15-17), the ALJ failed to discuss whether she met Listing 12.07, Somatoform Disorders. Devillez argues that this lack of consideration means the ALJ failed to build a logical bridge between the record evidence and his Step Three conclusion.

Listing 12.07 is met when there are "[p]hysical symptoms for which there are no demonstrable organic findings of known physiologic mechanisms." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.07. A claimant's symptoms meet or equal this Listing only if sub-listings A and B are both satisfied.[2] Devillez notes that despite her test results showing no physical problems, she has confined herself to a wheelchair, and no treatment seems to alleviate her pain. (R. at 245-46, 268, 295-96). Moreover, Drs. Flamion and Parikh opined that

---

[2] A claimant satisfies sub-listing A by a documented history of, among other things, "persistent nonorganic disturbance" of vision, speech, hearing, use of a limb, movement and its control, or sensation. *Id.* at § 12.07(A)(2). It can also be satisfied by "[u]nrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury." *Id.* at § 12.07(A)(3). Sub-listing B is satisfied by the sub-listing A issues resulting in at least two of the following: marked restrictions in daily living; marked restrictions in social functioning; marked limitations in concentration, persistence, and pace; and repeated episodes of decompensation, each of extended duration. *Id.* at § 12.07(B).

the pain was not supported by any physiological tests. (R. at 283-84, 394). Devillez claims the wheelchair confinement shows persistent disturbance of use of her legs, satisfying sub-listing 12.07(A)(2)(d)), and the doctors' evaluations show she has an unrealistic belief that she has a serious disease or injury, meeting sub-listing 12.07(A)(3). Devillez also claims to meet sub-listing 12.07(B) because she is unable to care for herself or correct simple mistakes, is not oriented, her psychomotor skills are retarded, and she has a Global Assessment of Functioning ("GAF") of 40.[3] (R. at 366, 404-06). She argues that these demonstrate marked restriction of daily living activities and difficulties in maintaining concentration, persistence and pace. 20 C.F.R. Part 404 Subpart P, Appendix 1 § 12.07(B)(1), (3).

    Devillez's argument is not persuasive. The Seventh Circuit has set a very high standard for when a deficient listings analysis will be grounds for a remand. For remand to be appropriate, the analysis must be "so poorly articulated as to prevent meaningful review." *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003). An ALJ's failure to mention any specific listings is only grounds for remand if the ALJ's Step Three analysis is

---

[3] A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed adult avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (6th ed. 1994) ("DSM-IV").

6

perfunctory; even then, remand is discretionary.  *Mogg v. Astrue*, 266 Fed. App'x 470, 471 (7th Cir. 2008) (quoting *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006)).  In her analysis of whether Devillez's symptoms met or equaled Listing 12.04, the ALJ extensively evaluated the evidence record evidence and concluded she did not meet the "paragraph B" criteria required to meet Listing 12.04.  (R. at 15-16).  The paragraph B criteria is the same for Listings 12.04 and 12.07, and the court finds the ALJ's discussion for Listing 12.04 is sufficient to conduct a meaningful review of whether Devillez met or equaled Listing 12.07.

Moreover, substantial evidence supported the ALJ's finding that Devillez did not have a substantial impairment.  Disability Determination Services ("DDS") examining psychologist Dr. Maura Clark evaluated Devillez and concluded that Devillez's depression was an affective disorder; it was not indicative of somatoform disorder or any other severe impairment.  (R. at 308, 311, 314).  DDS reviewing psychologist Dr. William Shipley reviewed the entire record and affirmed Dr. Clark's assessment.  (R. at 392).  Medical professionals' completed disability determination forms can by themselves constitute substantial evidence that a claimant's symptoms did not meet or equal any Appendix 1 Listing.  *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).  Therefore, the ALJ's finding that Devillez's impairments did not meet or equal an Appendix 1 Listing must be affirmed.

### B. Did the ALJ err in his analysis of Dr. Wuertz's findings?[4]

Dr. Wuertz evaluated Devillez several times starting in December 2010, while she was a patient with Southwestern Indiana Mental Health Center ("Southwestern"), including an extensive psychological evaluation. (R. at 359-61, 363-65). The ALJ twice referenced Devillez's treatment at Southwestern, noting that "[w]hen she started therapy, she was described as oriented, logical, coherent, sequential, with appropriate and unremarkable thought content" (R. at 16), and that her treatment record at Southwestern did not support her claim that she experienced visual hallucinations of bugs. (R. at 20).

However, the ALJ never referred to Dr. Wuertz specifically, nor did the ALJ assign weight to his opinion. The parties agree Dr. Wuertz is a treating source, 20 C.F.R. §§ 404.1502, 416.902, and that the ALJ's failure to evaluate and assign weight to his findings violated SSR 96-2p. The Commissioner claims this was harmless error, arguing that the ALJ evaluated Dr. Wuertz's findings against other medical evidence and concluding Dr. Wuertz's restrictive findings were not supported by the record. The Commissioner notes that while Dr. Wuertz explicitly mentioned Devillez being wheelchair-bound, the ALJ concluded that the record did not support her needing a wheelchair. (R. at

---

[4] Devillez also briefly claims the ALJ erred by referencing her examination by Dr. Gregory Unfried (R. at 21) but failing to assign weight to Dr. Unfried's assessment. However, Devillez does not claim that Dr. Unfried was ever her treating doctor. An ALJ is not required to assign weight to every non-treating medical opinion. *Cf.* SSR 96-2p, 1996 WL 374188 (Jul. 2, 1996) (listing requirements for assigning weight to treating opinions but containing no requirement to weigh opinions of non-treating medical sources). Moreover, since the court has held that the ALJ's mental RFC determination was supported by substantial evidence, any error in failing to explicitly weigh Dr. Unfried's testimony is harmless.

8

15-16, 19, 359). The Commissioner claims that it is clear that the ALJ would have come to the same conclusion had he properly evaluated and weighed Dr. Wuertz's opinion, and thus the ALJ's failure does not constitute reversible error. *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009).

The court does not agree with the Commissioner. An ALJ's error is only harmless as long as the court can confidently conclude that the ALJ would reach the same result on remand. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). When examining Dr. Wuertz's treatment records, the court concludes that the ALJ may have assigned a more restrictive mental RFC had she expressly evaluated Dr. Wuertz's opinion. During Devillez's treatment with him, Dr. Wuertz assessed a GAF score of 40, stating that it had never been higher than 42 over the last year. (R. at 364). Dr. Wuertz diagnosed her with depression, increasing her prescription dosage on three separate occasions. In February 2011, he noted that Devillez's depression was not improving and that she was hearing voices more frequently. In addition, he noted her speech was impoverished and that she had limited attention, concentration, judgment, and insight. In March and April 2011, Dr. Wuertz also noted that she was disoriented, had retarded psychomotor skills, and had become even more depressed. (R. at 361, 410, 412).

Even accepting the Commissioner's argument that the ALJ examined and discounted Dr. Wuertz's observations about Devillez being wheelchair bound

9

and the intensity of her symptoms, the ALJ still did not perform a complete analysis. The ALJ did not address Dr. Wuertz's conclusions that Devillez had impoverished speech, was disoriented, and was seriously limited in several mental areas. (*See, e.g.*, R. at 410, 412). These conclusions, if given great weight, may require a more restrictive mental RFC, which in turn may alter the VE's testimony at Step Five. Since the court is not confident that the ALJ would make the same decision after fully analyzing Dr. Wuertz's opinion, the case must be remanded.

**C.    Whether the remainder of the ALJ's RFC determination was supported by substantial evidence**

While the case must be remanded for the ALJ to evaluate Dr. Wuertz's opinion, the court further analyzes Devillez's arguments to determine the scope of remand. Devillez claims that the ALJ cited no medical opinions upon which to base her RFC determination, ignoring these opinions and substituting her own judgment in violation of SSA regulations. *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985). By supposedly discounting all medical record evidence except for parts of Dr. Parikh's report and assigning her an RFC of sedentary work (R. at 26, 393-403), Devillez claims the ALJ failed to build a logical bridge between substantial evidence and her RFC assessment. Devillez further argues that the ALJ improperly discounted the consultative examinations of Drs. David Cerling and Bryant Bloss as inconsistent with the

10

record and Devillez's functioning, respectively.[5]  (R. at 25, 301-07).  If Drs. Cerling and Bloss's opinions had been properly weighed, Devillez opines, the ALJ would have found her to be disabled.

The court is mindful that its only question is whether substantial evidence supported the ALJ's RFC determination, and the court finds that there was.  Despite Devillez claiming a back impairment made her unable to walk and caused severe pain (R. at 47, 92, 209), Dr. Ryan Flamion noted that she had 5/5 strength in both legs.  (R. at 284).  A magnetic resonance imaging of Devillez's lumbar spine revealed no clear cause for her complaints of pain or lower extremity weakness.  (R. at 244-45).  In September 2011, Dr. David Sorentino opined that Devillez's disc disease was mild. (R. at 441).  That same month, in an examination with Dr. John Wy, Devillez moved all four extremities equally, and Dr. Wy noted that Devillez's medical history contained no suggestion of radiculopathy.  (R. at 455-56).  These findings were discussed and evaluated by the ALJ in making the RFC determination.

The mental component of the ALJ's RFC determination—that she could follow simple repetitive and routine instructions with only occasional contact with other people—was similarly supported by substantial evidence.  Dr. Clark found that Devillez's depression was not severe and that she had only mild

---

[5] Dr. Cerling assessed a GAF of 30 (R. at 304), which indicates "behavior [that] is considerably influenced by delusions or hallucinations *or* serious impairment, in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) *or* inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends)."  DSM-IV at 32.  Dr. Bloss opined that Devillez was "completely unable to do any work related activities."  (R. at 306).

11

restrictions or limitations in her daily living, social interaction, and concentration, persistence, and pace. (R. at 308, 318). While an ALJ should generally give more weight to examining sources than non-examining sources, 20 C.F.R. § 404.1527(d)(1), she is not required to do so. The ALJ's conclusions that Dr. Cerling's opinion was not consistent with the record as a whole (R. at 25) and Dr. Bloss's opinion was inconsistent with the rest of the ER treatment notes (R. at 21) are valid reasons to discount the opinions.

Accordingly, the court does not find the ALJ erred in her RFC assessment. However, if the ALJ gives greater weight to Dr. Wuertz's opinion on remand, she may need to adjust the mental component of the RFC determination.

### D. Whether the ALJ failed to fully discuss Dr. Parikh's opinion

The ALJ granted significant weight to part of Dr. Parikh's opinion, stating that it was supported by the other medical evidence and consistent with Devillez's RFC. The ALJ noted in particular that Dr. Parikh "advised that [Devillez] should get out of her wheelchair, increase activity, continue physical therapy, and learn coping mechanisms for pain." (R. at 25 (citing R. at 398)). The ALJ did not assign weight or discuss other portions of Dr. Parikh's opinion, including his findings that Devillez had significant bilateral pain and pronounced emotional or psychological problems that prevented her from moving, even after receiving a steroid treatment. The ALJ also did not discuss Dr. Parikh's diagnosis of lumbosacral radiculitis. (R. at 394-95, 399). Devillez claims that "[h]ad the ALJ given significant weight to the rest of Dr. Parikh's

12

findings, the opinion would have reflected a lower RFC and ultimately found no work existing in significant numbers in the national economy." (Plaintiff's Brief at 17).

Devillez's argument fails for two reasons. First, the portions of Dr. Parikh's opinion Devillez cites pertain to her recitation of symptoms to Dr. Parikh. The ALJ discounted Devillez's statements as not fully credible, and her findings that Devillez was only moderately restricted in activities of daily living and only somewhat physically limited in her ability to work were supported by substantial evidence. (R. at 15-16, 18-20). Devillez has not demonstrated how the ALJ assigning weight to those portions would change her credibility analysis and, consequently, her RFC.

Second, Dr. Parikh only treated Devillez between March and April 2011. Even accepting as accurate Dr. Parikh's diagnosis of lumbosacral radiculitis and Devillez's allegation of debilitating lower back and leg pain (R. at 395, 399), examinations in October 2010 and September 2011 showed no discernible medical cause for her complaints. (R. at 244, 455). Similarly, she had only mild restrictions in daily living in January 2011 and could move all four extremities equally in September 2011. (R. at 318, 456). Any debilitating symptoms did not last for a continuous period of at least twelve months and cannot serve as the basis for permanent disability. Given this, the court does not find the ALJ's analysis of Dr. Parikh's opinion to be improper and declines to remand for fuller consideration.

### III. Conclusion

The court finds the ALJ did not adequately evaluate Dr. Wuertz's opinion, and because his opinion may significantly impact Devillez's RFC, this case is **REMANDED** to the Commissioner for further proceedings consistent with this entry.

**SO ORDERED** the 29th day of May, 2013.

                                                William G. Hussmann, Jr.
                                                United States Magistrate Judge
                                                Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.